UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RUSSELL MCCOY,

                        Petitioner,

    -against-

JAMES J. WALSH,
Superintendent

                        Respondent.
-----------------------------------------------------------------x

MEMORANDUM AND ORDER

03-CV-1661 (ENV)

VITALIANO, D.J.

On March 24, 2003, *pro se* petitioner Russell McCoy filed this petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. McCoy attacks his state court conviction on four grounds: (1) his appellate counsel was ineffective, (2) confessions he made were involuntary and should have been suppressed, (3) there was insufficient evidence to support his conviction and (4) his right to be present at trial during summation was violated. For the reasons set forth below, McCoy's petition is dismissed.

## BACKGROUND

I.    McCoy's Statements to Police Officers and Subsequent Conviction

McCoy was convicted of one count of murder in the second degree and two counts of robbery in the first degree on January 5, 1999, after a trial in Supreme Court, Kings County. McCoy's convictions stemmed from a string of robberies occurring on October 20, 1997. In the first, which occurred at 2:15 p.m., McCoy and Clarence Jeffreys held up a pet store at gunpoint at 1123 Broadway in Brooklyn. Approximately six hours later, at 8:15 p.m., McCoy and Jeffreys robbed patrons of a grocery store at 575 Woodward Avenue, in Queens. Shortly thereafter, at 9:00 p.m., the same duo robbed a second grocery store at gunpoint at 444 Melrose Street in Brooklyn,

where a patron of the store was shot and killed. McCoy was 17 at the time of the robberies.

McCoy was arrested near his home two days later around 9:00 p.m., after being identified for police by Jeffreys' girlfriend. Police had been tipped off to McCoy's involvement by Jeffreys, who had confessed to the three incidents. At the time of his arrest and while being taken to the precinct, McCoy repeatedly asked the officers why he was being arrested, but was told to wait until after they had arrived at the precinct and he was given his Miranda warnings. After further delay at the precinct house, around 9:30 p.m., Detective Raul Perez read McCoy his rights. Thereafter, Detective Luis Martinez pointed to a video cassette recorder and television and asked McCoy if he had checked the stores for cameras. The question prompted an emotional outburst from McCoy, followed by a video-taped confession.

Approximately ten hours later, McCoy was questioned again about the robbery at 575 Woodward Avenue, this time by Detective Wade Hoffman. Hoffman did not restate the Miranda warnings, but did state, according to his testimony, that he told McCoy that his Miranda warnings were still "in effect" and that McCoy did not have to speak to him without an attorney. At that point, McCoy advised Hoffman that his hand was fractured, although McCoy does not suggest that he asked for and was refused medical attention. After questioning, McCoy signed a written statement concerning the 575 Woodward Avenue robbery. Shortly thereafter, another detective, after re-issuing the Miranda warnings, questioned McCoy about the robbery at 1123 Broadway, leading to another written statement concerning that incident. Early on the morning of October 23, after McCoy had already given his statements, McCoy's mother was informed of her son's whereabouts.

II. Procedural History

McCoy and Jeffreys were tried separately, resulting in convictions for both. McCoy appealed his conviction to the Appellate Division, Second Department. People v. McCoy, 284 A.D.2d 554; 727 N.Y.S.2d 133 (2d Dep't 2001) (hereinafter "McCoy I"). On this direct appeal, counsel for McCoy argued four points:

   i. the police coerced McCoy into making his confessions;
   ii. the trial court was biased against him;
   iii. the evidence presented at trial was insufficient to support his conviction for murder; and
   iv. McCoy's sentence was excessive.

(See Pet. Appellate Division Br. at 15-20) The Second Department dismissed McCoy's appeal, substantively addressing McCoy's coercion, insufficient evidence and excessive sentence claims. McCoy I, 284 A.D.2d at 554-556; 727 N.Y.S.2d at 134. McCoy's application for leave to appeal to the New York Court of Appeals was denied without discussion. See People v. McCoy, 97 N.Y.2d 707; 739 N.Y.S.2d 107; 765 N.E.2d 310 (2002).

McCoy subsequently filed a *pro se* motion for a writ of error *coram nobis*, alleging that his appellate counsel was constitutionally ineffective for failing to raise two additional claims on direct appeal:

1. McCoy's confessions should be suppressed because he was not informed of his charge in violation of N.Y. Crim. Pro. §140.15(2) and because Martinez spoke with McCoy before giving Miranda warnings and
2. McCoy was not present during summations in violation of his Sixth Amendment rights.

His motion was denied on December 23, 2002, the court ruling that McCoy "ha[d] failed to establish that he was denied the effective assistance of appellate counsel". People v. McCoy, 300 A.D.2d 601; 752 N.Y.S.2d 552 (2d Dep't 2002) (citing Jones v. Barnes, 463 U.S. 745 (1983)). McCoy's application for leave to appeal to the New York Court of Appeals was denied, see People v. McCoy, 99 N.Y.2d 630; 760 N.Y.S.2d 111; 790 N.E.2d 285 (2003), and on March 24, 2003, McCoy filed his

3

petition with this Court.

## DISCUSSION

I. <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214, 1219 (1996) ("AEDPA"), a writ of habeas corpus shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication (1) was contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court delineated an analytical framework to guide review of habeas claims, identifying the need to treat independently the "contrary to" and "unreasonable application" clauses of section 2254(d)(1).

With respect to the "contrary to" clause, a writ may issue if the state court decision "contradicts the governing law set forth in [Supreme Court] cases" or arrives at a different conclusion from the Supreme Court on "materially indistinguishable" facts. <u>Id.</u> at 405-06. With respect to the "unreasonable application" clause, a writ may issue if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. The "unreasonable application" inquiry, however, is limited, and the habeas court may only issue a writ where the state court's application of Supreme Court precedent was "objectively unreasonable." <u>Id.</u> at 409. "Some increment of incorrectness beyond error is required" for a decision to be considered objectively unreasonable, though the increment need not be great. <u>Francis S. v. Stone</u>, 221 F.3d 100, 111

4

(2d Cir. 2000).

   II.   Merits

   *A. Exhaustion*

Before turning to a federal court for habeas relief, a petitioner must first present his claims to the state court system in the interest of comity. 28 U.S.C. § 2254(b)(1); see generally O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); Coleman v. Thompson, 501 U.S. 722, 731, (1991). To satisfy this requirement, a petitioner need not quote the Constitution chapter and verse; it is enough for the petitioner to alert the state court to the federal nature of the claim through

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005) (citing Daye v. Attorney General, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)).

Of course, habeas petitioners often bring multiple claims in their federal habeas petition, sometimes blending exhausted and unexhausted claims. Courts faced with a so-called "mixed" petition have three options: (1) dismiss the petition in its entirety without prejudice, (2) dismiss the petition with prejudice in the event the claims are "patently frivolous" or (3) stay and hold the petition in abeyance to allow the petitioner to exhaust his claims before a state court. See Rhines v. Weber, 544 U.S. 269, 278 (2005). The stay and abeyance procedure is only appropriate in where there is good cause for failure to exhaust and the claim is not "plainly meritless." Id. at 277.

The four issues raised in McCoy's petition present such a mix. Only three of his four claims—coercion, insufficient evidence and ineffective appellate counsel—have been properly exhausted.[1] McCoy's absent-at-summation argument went unmentioned until his *coram nobis* petition. Contrary to McCoy's contention, his filing of a *coram nobis* petition based on his appellate counsel's failure to raise this claim exhausts only his ineffective assistance of counsel claim, not the underlying claim upon which it is based. See Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001). Thus, McCoy's petition is "mixed" in the parlance of the caselaw.[2]

Dismissing McCoy's petition without prejudice at this stage would deprive him of federal review of his claims. AEDPA's one-year statute of limitations has long ago expired, and McCoy's petition does not serve to toll it. See Duncan v. Walker, 533 U.S. 167, 181-82 (2001). Thus, given this harsh consequence, the Court must next consider whether the stay-and-abeyance procedure or deletion of McCoy's unexhausted claims are appropriate. See Rhines, 544 U.S. at 278. To that end, McCoy must establish: (1) that his failure to exhaust this claim is attributable to good cause and (2) that his claims are not plainly meritless. Should McCoy fail either inquiry, his petition cannot be stayed and held in abeyance. In any event, of course, if warranted, the Court can dismiss the unexhausted claim on the merits, the failure to exhaust notwithstanding. 28 U.S.C. § 2254(b)(2).

Although McCoy does not argue good cause in so many words, he does allege that his

---

[1] McCoy did not raise his allegations of psychological coercion based on the officers refusal to inform him as to the reason for his arrest on direct appeal, but he did argue on appeal that he was coerced both physically and psychologically. As a result, despite alleging a different factual basis for the coercion here, McCoy has exhausted this claim. See United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) (quoting Sanders v. United States, 373 U.S. 1, 16 (1963)).

[2] McCoy's failure to raise his absence claim on direct appeal procedurally defaults his appeal under New York law. See Sweet v. Bennett, 353 F.3d 135, 139-41 (2d Cir. 2003). However, procedural default can be excused where there is ineffective assistance of appellate counsel in not preserving the appeal and that ineffective assistance of counsel claim has been presented to the state courts (as it was here). See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001).

appellate counsel was ineffective for not raising the unexhausted issue on direct appeal. Many courts have held that ineffective assistance of counsel can constitute "good cause" for purposes of this determination. Aessa v. Annetts, 2006 U.S. Dist. LEXIS 98032 (E.D.N.Y. Dec. 20, 2006) (collecting cases). But the underlying claim's merits, or lack thereof, is the hinging point here. If the claim is meritless, appellate counsel cannot be found ineffective for failing to advance it. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make meritless arguments does not amount to ineffective assistance of counsel."). And if it is meritless, the failure to exhaust cannot be excused. Obviously, stay-and-abeyance is not appropriate either if the stay is sought to pursue a claim already found meritless. See Rhines, 544 U.S. at 277.

Substantively, McCoy contends that he was not present at the summations during his trial, alleging that the transcript of the proceedings does not even show a "hint" of his presence. However, the transcript of the trial proceedings as a whole does more than merely hint at McCoy's presence—it confirms it convincingly. Initially, on December 14, 1998, appearances were read into the record, including McCoy's. His presence at the end of proceedings on the 14th is evident, because he was questioned by the trial court before it adjourned for that day. Then, on December 15, 1998, the day of the summations, the transcript indicates that the appearances were the same as previously noted, *i.e.*, including McCoy. This fact is bolstered by the prosecutor's referring to McCoy in his summation as "this man, right here".

Given the absence of state court findings on this issue (and thus of the § 2254(e) presumption), McCoy must prove his claim by a preponderance of evidence. See e.g., Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000); see also RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE, Vol. II, § 30.2b, pg. 1497 (5th eds. 2005).

7

Here, the only piece of evidence McCoy proffers is the transcript of the proceedings, which proves exactly the opposite. McCoy's unexhausted claim is meritless and incapable of supporting an ineffective assistance of counsel claim or any other relief. The unexhausted claim is dismissed with prejudice. See 28 U.S.C. § 2254(b)(2).

III. Remaining Claims

McCoy's remaining claims also provide no basis for relief. The Court considers each in turn.

The first is McCoy's contention that his confessions were coerced because he was not informed of the reason for his detention at the time of arrest, in violation of New York statutory law. McCoy contends that his ignorance resulted in psychological terror, which coerced him into cooperating with the police. The Appellate Division rejected McCoy's coercion claim on direct appeal, but was not presented specifically with McCoy's allegation regarding the officers' failure to inform him of the reason for his detention. Nonetheless, this additional allegation does not render the decision on direct appeal unreasonable.

The Fourteenth Amendment, of course, prohibits the use of coerced confessions in state criminal proceedings. See Missouri v. Seibert, 542 U.S. 600, 607 (2004). "A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given." United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991) (internal citation omitted). Determining whether a confession was coerced requires scrutiny of the totality of circumstances, "including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." Id. The Second Department ruled that McCoy's confessions were properly admitted because it was undisputed that McCoy was not threatened, deprived of food or

8

drink, abused, or subjected to persistently overbearing questioning or that the police employed any trickery or coercive strategy. McCoy I, 284 A.D.2d. at 554-55; 727 N.Y.S.2d at 134. Of these conclusions, McCoy takes issue only with the last one, arguing that the officers' so-called "wall of silence" in response to his inquiries renders the interrogation coercive and the Appellate Division's determination unreasonable. The Court disagrees.

McCoy was arrested and brought to the precinct around 9:00 p.m. Upon arrival, he was still allegedly ignorant of the reason for his arrest. Once there, he was kept in the dark for another half hour or so. Shortly after being advised of his Miranda rights, Martinez asked McCoy one question, which led, some 15 to 20 minutes later (a delay attributable to McCoy's emotional response to Martinez's question), to McCoy's first confession. Put another way, McCoy was "forced" to deal with the alleged "wall of silence" for another 30 minutes before speaking. It is freely conceded that remaining in police custody for any period of time ignorant of the crime with which one is to be charged may be stressful. This may be especially so for a 17 year old. But stressful is not enough.

The Constitution requires that the suspect's decision to speak or stand mute be voluntary and based on a full appreciation of his Miranda rights. But the Supreme Court has "never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Moran v. Burbine, 475 U.S. 412, 422 (1986). The burden on police officers is to make clear to criminal suspects that they may have counsel and they may remain silent and that they have the "knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." Id. Those consequences are laid out to a defendant in the Miranda warning itself.

To be sure, knowledge of the crime of arrest goes to an evaulation of what the potential consequences of conviction are as opposed to the value of cooperation, *i.e.*, the type of self-interest calibrating information referenced in Moran. It does not bear, however, on the constitutional propriety of a defendant's decision to waive his right against self-incrimination and to give up the right to remain silent. See e.g., United States v. Sawinski, 2000 U.S. Dist. LEXIS 13283, *18-19 (S.D.N.Y. Sept. 20, 2000) (government agent's failure to tell a suspect about an outstanding arrest warrant did not influence his decision to waive his Miranda rights). The fact that McCoy was not aware of the reason for his arrest for the 30 minutes that elapsed following receipt of his Miranda warnings before he confessed does not render his confession involuntary or coerced. McCoy's coercion claim must be dismissed.[3]

With the failure of McCoy's coercion claim, his other claims must also tumble, for they are based on his allegations that the statements were coerced. Specifically, what's left of McCoy's ineffective assistance of counsel claim is based on his appellate counsel's failure to raise the "wall of silence" on direct appeal. Of course, as discussed above, given that the "wall of silence" claim is meritless, McCoy's ineffective assistance claim also fails. Similarly, McCoy contends that had his confessions been suppressed, then the jury would have only been left with unreliable in-court identifications, which would have been insufficient evidence upon which to convict him. However, there being no constitutional error in the admission of the confessions, those confessions, taken together with the identifications, create a record more than sufficient to support conviction (assuming for argument that those identifications by themselves were insufficient). McCoy's insufficiency claim, therefore, must also be dismissed.

---

[3] McCoy also alleges that his subsequent statements should be suppressed solely based on the alleged coercion of the first confession. There is, as a result, no basis for such an argument.

10

## CONCLUSION

For all the foregoing reasons, McCoy's petition for a writ of habeas corpus is dismissed with prejudice and the writ is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED**

Date: Brooklyn, NY
     August 20, 2009

/S/
_____
Eric N. Vitaliano
United States District Court Judge